## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| MELANIE C. KOLSTO, | CIVIL ACTION |
| Plaintiff, | |
| v. | COMPLAINT 1:19-cv-06693 |
| KEYNOTE CONSULTING, INC, and TRANSUNION, LLC, | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

**NOW COMES** Melanie C. Kolsto ("Plaintiff"), by and through her attorneys, Sulaiman Law Group, Ltd., complaining of Defendants, Keynote Consulting, Inc. ("Keynote") and TransUnion, LLC ("TransUnion and collectively, "Defendants"), as follows:

### NATURE OF THE ACTION

1.  Plaintiff brings this action seeking redress for Defendants' violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681, and Defendant Keynote's violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. §1692.

### JURISDICTION AND VENUE

2.  Subject matter jurisdiction is conferred upon this Court by the FCRA, FDCPA, and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3.  Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendants conduct business in the Northern District of Illinois, Plaintiff resides in the Northern District of Illinois, and all of the events or omissions giving rise to the claims occurred within the Northern District of Illinois.

1

## PARTIES

4.   Plaintiff is a consumer and natural person over 18-years-of-age.

5.   Defendant Keynote is a privately held collection agency with its principal place of business located 220 W. Campus Drive, Suite 102, Arlington Heights, IL 60004. Keynote has allegedly "perfected a proven style for collecting Medical, Consumer and Commercial Accounts."[1] Keynote's primary business is the collection of defaulted debts owed to others across the country, including in the State of Illinois. Keynote is a furnisher of credit information to the major credit reporting agencies, including TransUnion.

6.   Defendant TransUnion is a Delaware limited liability corporation with its principal place of business located in Chicago, Illinois. TransUnion is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports and credit files to third parties bearing on a consumer's credit worthiness, credit standing, and credit capacity on a nationwide basis, including in the State of Illinois.

## BANKRUPTCY CASE

7.   Prior to 2015, Plaintiff received medical treatment from the Midwest Center for Digestive Health, a practice that has since become part of the Illinois Gastroenterology Group ("subject debt").

8.   On July 21, 2015, Plaintiff filed a Chapter 7 Bankruptcy Petition in the United States Bankruptcy Court, Northern District of Illinois, case number 15-24812 ("bankruptcy").

9.   Schedule F of the bankruptcy petition listed the subject debt in the amount of $281.01.

---

[1] http://keynote-collections.com/

10. On July 24, 2015, because Plaintiff listed Midwest Center for Digestive Health as a creditor, the Bankruptcy Noticing Center ("BNC") served Midwest Center for Digestive Health with notice of Plaintiff's bankruptcy filing.

11. Plaintiff fully performed her duties and at no time did Plaintiff reaffirm the subject debt nor did Midwest Center for Digestive Health file a proof of claim.

12. On October 19, 2015, the Bankruptcy Court entered a Discharge Order in Plaintiff's bankruptcy case discharging all dischargeable debts, including the subject debt.

13. Pursuant to 11 U.S.C. §524, the Order of Discharge invoked the protections of the discharge injunction prohibiting any acts to collect upon the subject debt by Midwest Center for Digestive Health or any other party.

14. Plaintiff's personal liability on the subject debt was extinguished via her bankruptcy discharge, thus terminating the business relationship with Midwest Center for Digestive Health, and any of its successors and assigns.

15. At some point after Plaintiff's bankruptcy filing, Keynote acquired the subject debt while it was in default for the purposes of collection.

### CREDIT REPORTING AND PLAINTIFF'S CREDIT DISPUTES TO TRANSUNION

16. In early 2019, years after Plaintiff received her discharge, Plaintiff pulled her TransUnion credit report. On this report, Plaintiff noticed that Keynote Consulting added a trade line for Illinois Gastroenterology Group, the group that acquired Midwest Center for Digestive Health, and was reporting a balance equivalent to the amount listed in her petition.

17. The reporting of the subject debt was inaccurate, incomplete, and materially misleading because the subject debt was discharged in Plaintiff's bankruptcy on October 19, 2015, and only reported by Keynote subsequent to the discharge, and thus should not have been reported on

3

Plaintiff's credit at all. Furthermore, the trade line was being reported as with an "Account Type" of open, even though it was discharged in Plaintiff's bankruptcy.

### a. Plaintiff's Dispute Letter to TransUnion

18. On June 24, 2019, Plaintiff sent a detailed written credit dispute letter to TransUnion requesting it to remove the Keynote trade line from her credit report, as Keynote acquired the subject debt post discharge.

19. Among other things, Plaintiff's dispute letter stated the following:

> "This debt collector picked up this debt post-discharge and added it to my credit reports almost three years after filing bankruptcy. I demand this account be removed from my credit report in full as my liability was severed…"

20. Upon information and belief, Keynote received notice of Plaintiff's dispute letter and all relevant bankruptcy information from TransUnion within five days of TransUnion receiving Plaintiff's dispute letter. *See* 15 U.S. Code §1681i(a)(2).

### b. TransUnion's Failure to Correct Inaccurate Reporting

21. On July 1, 2019, TransUnion responded to Plaintiff's dispute letter by failing to properly investigate Plaintiff's dispute. TransUnion failed to remove the Keynote trade line and continued to report the "Account Type" as open. TransUnion failed to review and consider all of the relevant bankruptcy information submitted by Plaintiff to TransUnion.

22. The reporting of the Keynote trade line is patently inaccurate and creates a materially misleading impression that Plaintiff still has an open account with Keynote.

**IMPACT OF CONTINUING**
**INCORRECT REPORTING ON PLAINTIFF'S CREDIT FILE**

23. As of today, TransUnion's erroneous reporting of the Keynote account continues to paint a false and damaging image of Plaintiff. TransUnion and Keynote have yet to remove the Keynote trade line and continue to report it as an open account.

24. The entire experience has imposed upon Plaintiff significant distrust, frustration, distress, and has rendered Plaintiff helpless as to her ability to regain a firm foothold on her creditworthiness, credit standing, credit capacity, and her ability to move forward after her bankruptcy discharge.

25. The inaccurate and incomplete reporting of subject debt continues to have significant adverse effects on Plaintiff's credit rating and her ability to obtain financing because it creates a false impression that Plaintiff is still obligated to pay on the subject debt, rendering Plaintiff a high-risk consumer and damaging her creditworthiness.

26. In late September 2019, in an effort to remedy the continued inaccurate and incomplete reporting of the subject debt and to validate the accuracy of Defendants' credit reporting, Plaintiff purchased a Credit Report from TransUnion, incurring out of pocket expenses.

27. Plaintiff suffered monetary damages she otherwise would not have incurred had Defendants ceased or corrected the inaccurate reporting of the subject debt after Plaintiff's dispute.

28. As a result of the conduct, actions, and inaction of the Defendants, Plaintiff has suffered various types of damages as set forth herein, including specifically, out-of-pocket expenses, the loss of credit opportunity, time and money expended meeting with her attorneys, tracking the status of her dispute, monitoring her credit file, and mental and emotional pain and suffering.

29. Due to the conduct of the Defendants, Plaintiff was forced to retain counsel to resolve the erroneous credit reporting of the Keynote trade line.

## COUNT I - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
(AGAINST KEYNOTE)

30. Plaintiff restates and reallages paragraphs 1 through 29 as though fully set forth herein.

31. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(b) and (c).

32. Plaintiff is a "person" as defined by 15 U.S.C. §1681a(b).

33. Keynote is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

34. At all times relevant, the above mentioned credit reports were "consumer reports" as the term is defined by §1681a(d)(1).

35. Keynote violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving requests for an investigation from TransUnion and Plaintiff.

36. Keynote violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information, namely Plaintiff's discharge order, provided by TransUnion and Plaintiff pursuant to 15 U.S.C. §1681i(a)(2).

37. Had Keynote reviewed the information provided by TransUnion and Plaintiff, it would have removed the trade line or corrected the inaccurate designation of the subject debt, transmitting the correct information to TransUnion. Instead, Keynote wrongfully and erroneously confirmed its inaccurate reporting without conducting a reasonable investigation.

38. Keynote violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the complete results of the investigation or reinvestigation of Plaintiff's disputes with TransUnion.

39. Keynote violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation or reinvestigation to TransUnion after being put on notice and discovering inaccurate and misleading reporting with respect to the subject debt.

40. Keynote violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information from appearing and reappearing on Plaintiff's credit files.

41. Keynote failed to conduct a reasonable investigation of its reporting of the subject debt, record that the information was disputed, or delete the inaccurate reporting from Plaintiff's credit files within 30 days of receiving notice of Plaintiff's disputes from TransUnion under 15 U.S.C. §1681i(a)(1).

42. Despite the blatantly obvious errors in Plaintiff's credit files, and Plaintiff's efforts to correct the errors, Keynote did not remove the trade line. Furthermore, Keynote did not correct the errors or the trade line to report accurately and completely, even though it should not have been reported at all. Instead, Keynote wrongfully furnished and re-reported the inaccurate and misleading information after Plaintiff's disputes to one or more third parties.

43. A reasonable investigation by Keynote would have confirmed the veracity of Plaintiff's disputes, yet the inaccurate information continues to be reported in Plaintiff's credit files.

44. Had Keynote taken steps to investigate Plaintiff's valid dispute or TransUnion's request for investigation, it would have permanently corrected the erroneous, incomplete, and materially misleading credit reporting. Plaintiff provided all relevant information to support her valid disputes in her requests for investigation. Furthermore, Plaintiff's bankruptcy information is public record that is widely available and easily accessible.

45. By deviating from the standards established by the mortgage servicing industry and the FCRA, Keynote acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to TransUnion.

**WHEREFORE,** Plaintiff MELANIE C. KOLSTO respectfully prays this Honorable Court for the following relief:

    a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

    a. An order directing that Keynote immediately delete all of the inaccurate information from Plaintiff's credit reports and credit files;

    b. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

    c. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

    d. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

    e. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

    f. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT II - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
(AGAINST TRANSUNION)

46. Plaintiff restate and realleges paragraphs 1 through 45 as though fully set forth herein.

47. TransUnion is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

48. TransUnion is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

49. At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

50. At all times relevant, Plaintiff is a "consumer" as the term is defined by 15 U.S.C. §1681a(c).

51. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

52. The FCRA requires that the credit reporting industry to implement procedures and systems to promote accurate credit reporting.

53. If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information, or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

54. Plaintiff provided TransUnion with all relevant information and documentation in her request for investigation and reinvestigation to reflect her bankruptcy discharge and that she is no longer personally liable for the subject debt.

55. TransUnion prepared Plaintiff's credit reports containing inaccurate, incomplete, and materially misleading information by reporting the subject debt with an open account status.

56. Furthermore, TransUnion prepared an inaccurate consumer report by reporting the Keynote trade line for the first time more than three years after Plaintiff's bankruptcy was discharged.

57. TransUnion prepared an incomplete consumer report of Plaintiff by failing to completely and accurately notate that Plaintiff is disputing the reporting of the subject loan in violation of 15 U.S.C. §1681c(f).

58. TransUnion violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished regarding Plaintiff. Upon information and belief, TransUnion prepared patently false and materially misleading consumer reports concerning Plaintiff.

59. TransUnion violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the information in Plaintiff's credit files.

60. Had TransUnion taken any steps to investigate Plaintiff's valid dispute, it would have removed the trade line from Plaintiff's consumer report.

61. TransUnion violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Plaintiff's dispute to Keynote. Upon information and belief, TransUnion also failed to include all relevant information as part of the notice to Keynote regarding Plaintiff's dispute that TransUnion received from Plaintiff.

62. TransUnion violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff with regard to the subject loan.

63. TransUnion violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the inaccurate information that was the subject of Plaintiff's dispute.

64. TransUnion violated 15 U.S.C. §1681c(f) by failing to notate that Plaintiff disputed the reporting of the subject loan. TransUnion is required to notate each account that a consumer disputes in each consumer report that includes the disputed information.

65. After Plaintiff's written detailed dispute, TransUnion had specific information related to Plaintiff's bankruptcy case, and subsequent discharge order, which included the subject debt.

66. TransUnion knew that the inaccurate reporting of the subject debt in Plaintiff's credit files under the Keynote trade line with an open account status, after her bankruptcy discharge, would have a significant adverse affect on Plaintiff's credit worthiness and ability to receive a "fresh start" after completing her bankruptcy.

67. Furthermore, TransUnion knew that reporting the Keynote trade line for the first time more than three years after Plaintiff's bankruptcy discharge, would have a significant adverse affect on Plaintiff's credit worthiness and ability to receive a "fresh start" after completing her bankruptcy.

68. The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

69. Despite actual knowledge that Plaintiff's credit files contained erroneous information, TransUnion readily sold Plaintiff's inaccurate and misleading reports to one or more third parties, thereby misrepresenting facts about Plaintiff and, ultimately, Plaintiff's creditworthiness.

70. By deviating from the standards established by the credit reporting industry and the FCRA, TransUnion acted with a reckless disregard for its duties to report accurate and complete consumer credit information.

71. It is TransUnion's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

72. TransUnion's perpetual non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining Plaintiff's credit files and reporting her credit information accurately and completely.

73. TransUnion acted reprehensively and carelessly by reporting and re-reporting the Keynote trade line after Plaintiff's bankruptcy discharge.

74. TransUnion has exhibited a pattern of refusing to correct errors in consumer credit files despite being on notice of patently false and materially misleading information contained in such files, ultimately valuing its own bottom line above its grave responsibility to report accurate data on consumers.

75. As stated above, Plaintiff was severely harmed by TransUnion's conduct.

**WHEREFORE**, Plaintiff MELANIE C. KOLSTO respectfully prays this Honorable Court for the following relief:

    a.  Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

    b.  An order directing that TransUnion immediately delete all of the inaccurate information from Plaintiff's credit reports and credit files;

    c.  Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

    d.  Award Plaintiff statutory damages of $1,000.00 for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

    e.  Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

    f.  Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and

    g.  Award any other relief as this Honorable Court deems just and appropriate.

### COUNT III – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
(AGAINST KEYNOTE)

76.  Plaintiff restates and realleges paragraphs 1 through 75 as though fully set forth herein.

77.  The Plaintiff is a "consumer" as defined by FDCPA §1692a(3).

78.  The subject debt qualifies as a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

79.  Keynote qualifies as a "debt collector" as defined by §1692a(6) because it regularly collects debts and uses the mail, credit reporting, and/or the telephones to collect or attempt to collect delinquent consumer accounts.

80.  Keynote qualifies as a "debt collector" because it acquired rights to the subject debt after it was allegedly in default. 15 U.S.C. §1692a(6).

81. Keynote's credit reporting communications to Plaintiff were made in connection with a collection of the subject debt.

82. Section 524(a)(2)-(3) of the Bankruptcy Code, commonly known as the "discharge injunction," prohibits "an act, to collect, recover or offset any such debt as a personal liability of the debtor," and "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor." 11 U.S.C. §§524(a)(2)-(3).

83. Keynote violated 15 U.S.C. §§1692e(8) through its debt collection efforts on a debt discharged in bankruptcy.

### a. Violations of FDCPA § 1692e

84. Keynote violated §1692e(8) by communicating false credit information to TransUnion that it knew, or should have known, to be false by inaccurately reporting the account type as an open account. This information was inaccurate and misleading because the subject debt was discharged and therefore Plaintiff had no further obligations to Keynote upon entry of her discharge.

85. 15 U.S.C. §1692e(8) also requires a debt collector to disclose the fact that a debt is disputed.

86. Keynote violated §1692e(8) when it failed to designate its trade line as disputed after receiving notice of Plaintiff's dispute from Plaintiff and Transunion.

87. Keynote had actual knowledge that the subject debt was disputed because it received notices of Plaintiff's dispute from Plaintiff and TransUnion.

88. Moreover, Keynote violated §1692e(8) when it reported the trade line for the first time more than three years after Plaintiff had received a bankruptcy discharge.

13

89. Keynote attempted to dragoon and induce the Plaintiff into paying a debt that was not legally owed.

90. As an experienced creditor and debt collector, Keynote knew or should have known the ramifications of collecting on a debt that was discharged in bankruptcy.

91. Keynote knew or should have known that Plaintiff's discharged debt was uncollectable as a matter of law.

92. Upon information and belief, Keynote has no system in place to identify and cease collection of debts discharged in bankruptcy.

93. Concerned about the violations of her rights and protections afforded by her bankruptcy filing and subsequent discharge, Plaintiff sought the assistance of counsel to ensure that Keynote's collection efforts finally cease.

**WHEREFORE**, Plaintiff MELANIE C. KOLSTO respectfully prays this Honorable Court for the following relief:

   a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
   b. Award the Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;
   c. Award the Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and
   d. Award any other relief as this Honorable Court deems just and appropriate.

**Plaintiff demands trial by jury.**

Dated: October 9, 2019

**Respectfully Submitted,**

/s/ Alexander J. Taylor
/s/ Marwan R. Daher
/s/ Omar T. Sulaiman
Alexander J. Taylor, Esq.
Marwan R. Daher, Esq.
Omar T. Sulaiman, Esq.
Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200
Lombard, Illinois 60148
Telephone: (630) 575-8181
Facsimile: (630) 575-8188
ataylor@sulaimanlaw.com
mdaher@sulaimanlaw.com
osulaiman@sulaimanlaw.com
*Counsel for Plaintiff*

15